**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

KATHY C.,

                         Plaintiff,

       v.

NANCY A. BERRYHILL,
Commissioner of Social Security,

                        Defendant.

No. 5:18-CV-00088
(CFH)

_____

**APPEARANCES:**

Olinsky Law Group
300 South State Street, Suite 420
Syracuse, New York 13202
Attorney for plaintiff

Social Security Administration
Office of Regional General Counsel
Region II
26 Federal Plaza – Room 3904
New York, New York 10278
Attorney for the Commissioner

**OF COUNSEL:**

HOWARD D. OLINSKY, ESQ.

OONA M. PETERSON, ESQ.
Special Assistant U.S. Attorney

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER

Plaintiff Kathy C. brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying her application for supplemental security income ("SSI").  Dkt. No. 1

("Compl.").[1]  Plaintiff moves for a finding of disability or remand for a further hearing,

and the Commissioner cross-moves for a judgment on the pleadings.  Dkt. Nos. 17, 22.

For the following reasons, the determination of the Commissioner is affirmed.

## I. Relevant Background

## A. Factual Background

At the time of the hearing, plaintiff was a forty-seven-year-old female who lived in

an apartment with her boyfriend and two children.  T. 64.[2]  Plaintiff completed tenth

grade, and most recently worked part-time as a cook.  Id. at 64.

## B. Procedural Background

On May 13, 2014, plaintiff protectively filed a Title XVI application for SSI

benefits.  T. 195-201.  Plaintiff's application was initially denied on August 7, 2014.  Id.

at 99.  Plaintiff requested a hearing, and a hearing and a supplemental hearing were

held on September 12, 2016 and November 14, 2016, respectively, before

Administrative Law Judge ("ALJ") Elizabeth W. Koennecke.  Id. at 59-85.  ALJ

Koennecke determined that plaintiff "ha[d] not been under a disability within the

meaning of the Social Security Act since May 13, 2014, the date the application was

_____

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. §
636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  Dkt. No. 15.

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the
Commissioner.  Dkt. No. 9.  Citations refer to the pagination in the bottom right-hand corner of the
administrative transcript, not the pagination generated by CM/ECF.

filed." Id. at 14.  The Appeals Council denied plaintiff's request for review, making the

ALJ's findings the final determination of the Commissioner.  Id. at 1-6.  Plaintiff

commenced this action on January 19, 2018.  See Compl.


### C. ALJ Decision

Applying the five-step disability analysis, the ALJ determined that plaintiff had not

engaged in substantial gainful activity since May 13, 2014, the application date.  T. 15.

The ALJ found at step two that plaintiff had the severe impairments of neck impairment,

back impairment, knee impairment, and a mental impairment.  Id.  At step three, the

ALJ determined that plaintiff did not have an impairment or combination of impairments

that met or medically equaled the severity of one of the listed impairments in 20 C.F.R.

Part 404, Subpart P, Appendix 1.  Id. at 17.  Before reaching step four, the ALJ

concluded that plaintiff retained the residual functional capacity ("RFC") to

> lift, carry, push and/or pull ten pounds occasionally and less
> than ten pounds frequently, sit for a total of six hours and stand
> and/or walk a total of two hours in an eight-hour workday.  She
> can rarely twist, stoop, crouch and climb stairs, and should
> never climb ladders.  Mentally, [plaintiff] retains the ability to
> understand and follow simple instructions and directions;
> perform simple tasks independently; maintain attention and
> concentration for simple tasks; and regularly attend to a routine
> and maintain a schedule.  She can relate to and interact
> appropriately with all others to the extent necessary to carry
> out simple tasks. [Plaintiff] can also handle simple, repetitive,
> work-related stress, in that she can make occasional decisions
> directly related to the performance of simple tasks in a position
> with consistent job duties that does not require her to supervise
> or manage the work of others.

Id. at 18-19.  At step four, the ALJ found that plaintiff was unable to perform any past

3

relevant work.  Id. at 22.  At step five, the ALJ determined that, after consulting with a vocational expert, and considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  Id. at 23.  Thus, the ALJ determined that plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, since May 13, 2014, the date the application was filed."  Id. at 24.

### D. The Parties' Arguments

Plaintiff first argues that the ALJ's RFC determination is not supported by substantial evidence because she impermissibly substituted her own judgment for that of a medical professional and she failed to make any specific findings regarding plaintiff's ability to tolerate stress.  See Dkt. No. 17 at 16-23.  Plaintiff also suggests that the ALJ erred by not recontacting the consultative examiner regarding his opined limitation as to plaintiff's ability to tolerate stress.  Id. at 17. Further, plaintiff contends that the ALJ's conclusion that plaintiff did not have reaching limitations is not supported by any medical opinion.  Id. at 19.  Conversely, the Commissioner argues that the ALJ's decision must be affirmed because it is supported by substantial evidence.  Dkt. No. 22 at 4-20.  Specifically, the Commissioner contends that the ALJ's physical and mental RFC determinations are supported by substantial evidence.

## II. Legal Standard

## A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder *would have to conclude otherwise*."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the

plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based on his or her age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairments is "based [upon] objective medical facts, diagnoses or medical opinions inferable from the facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

6

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. at 1180 (citing Berry, 675 F.2d at 467).

## III. Analysis

### A. The ALJ's Analysis of Opinion Evidence and Plaintiff's RFC

When evaluating a claim seeking disability benefits, factors to be considered by the ALJ include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. See Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir.1991). Generally, more weight is given to a treating source. Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2005); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "This rule applies equally to retrospective opinions given by treating physicians." Campbell v. Astrue, 596 F. Supp. 2d 445, 452 (D.Conn. 2009) (citations omitted). Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503. If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given. See Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999)

8

(citation omitted).  Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner.  See id. at 133-34; 20 C.F.R. § 404.1527(e) (2005).

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms.  See Martone, 70 F. Supp. 2d at 150; 20 C.F.R. §§ 404.1545, 416.945.  "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient."  Martone, 70 F. Supp. 2d at 150.  The ALJ then uses the RFC to determine whether the claimant can perform his or her past relevant work.  See New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960.  If it is determined that a claimant cannot perform past relevant work, "the burden shifts to the Commissioner to determine whether there is other work which the claimant could perform."  Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability.  See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability

9

claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). "An ALJ should consider 'all medical opinions received regarding the claimant.'" Reider v. Colvin, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

The ALJ found that plaintiff could

> lift, carry, push and/or pull ten pounds occasionally and less than ten pounds frequently, sit for a total of six hours and stand and/or walk a total of two hours in an eight-hour workday. She can rarely twist, stoop, crouch and climb stairs, and should never climb ladders. Mentally, [plaintiff] retains the ability to understand and follow simple instructions and directions; perform simple tasks independently; maintain attention and concentration for simple tasks; and regularly attend to a routine and maintain a schedule. She can relate to and interact appropriately with all others to the extent necessary to carry out simple tasks. [Plaintiff] can also handle simple, repetitive, work-related stress, in that she can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require her to supervise or manage the work of others.

T. 18-19. The regulations define sedentary work as work that

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and

10

standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).


### 1. Relevant Medical Evidence

On July 8, 2014, plaintiff met with Dr. Elke Lorensen for an internal medicine examination. T. 504. Dr. Lorensen indicated that plaintiff appeared to be in no acute distress. Id. Her gait was abnormal, and she declined walking without her cane. Id. Dr. Lorensen indicated that plaintiff favored her left leg when she ambulated with her cane, and declined walking on her heels and toes. Id. Plaintiff's stance was normal. Plaintiff indicated that she used a cane for balance, and that she used it all the time as it was prescribed by her doctor. Id. Dr. Lorensen noted that she could not describe plaintiff's gait without the cane because she refused to walk without the cane, and stated that she cannot walk without it. Id. Plaintiff did not change for the examination, and used the cane to get on and off the examination table. She also used the cane to rise from her chair. Id.

Dr. Lorensen indicated that plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. T. 507. Plaintiff's lumbar spine flexion was fifty degrees and extension, lateral flexion, and rotation were fifteen degrees bilaterally. Id. Plaintiff's SLR was negative bilaterally. Id. Her forward elevation and abduction of the shoulders was 110 degrees. Id. Plaintiff had full range of motion in her elbows, forearms, and wrists bilaterally. Id. Plaintiff's hip

flexion was seventy degrees on the left and sixty on the right, and her knee flexion was seventy-five degrees bilaterally.  Id.  Plaintiff had full range of motion in her ankles bilaterally.  Id.  Although plaintiff had decreased sensation to touch and sharp noted in her right leg, she had 5/5 strength in her upper and lower extremities.  Id.  Dr. Lorensen also indicated that plaintiff's hand and finger dexterity were intact, and her grip strength was 5/5 bilaterally.  Id.

Dr. Lorensen diagnosed plaintiff with back pain, hypertension, asthma/chronic obstructive pulmonary disease, and obesity.  T. 508.  She opined that plaintiff had "moderate restrictions standing and ambulating presumably due to [the] need for assistive device."  Id.  Plaintiff had "moderate to marked restrictions bending, lifting, and reaching."  Id.  Dr. Lorensen noted that plaintiff should avoid smoke, dust, and other respiratory irritants.  Id.  She noted that plaintiff's prognosis was fair.  Id.

Plaintiff also met with Dr. Dennis M. Noia for a psychiatric examination on July 8, 2014.  T. 512.  Plaintiff reported symptoms of depression and anxiety, including dysphoric moods, psychomotor retardation, crying spells, loss of usual interests, increased irritability, fatigue and loss of energy, problems with memory, problems with concentration, diminished sense of pleasure, restlessness, hypervigilence, flashbacks and nightmares relating to physical and emotional abuse, hyperstartle response, excessive apprehensiveness and worry, and fearfulness.  Id. at 513.  Plaintiff also admitted to symptoms of panic attacks, including nausea, sweating, trembling, heart palpitations, chest pain, difficulty breathing, and hyperventilation.  Id.  Plaintiff admitted that these symptoms occurred daily.  Id.

Dr. Noia indicated that plaintiff's demeanor and responsiveness to questions was cooperative. T. 514. Her manner of relating, social skills, and overall presentation was adequate. Id. Plaintiff looked her stated age, was appropriately dressed, and used a cane. Id. Her personal hygiene and grooming were good, posture normal, and eye contact appropriate. Id. Her speech intelligibility was fluent, and the quality of her voice was clear. Id. Her expressive and receptive language was adequate. Id. Dr. Noia indicated that plaintiff's thought processes were coherent and goal directed with no evidence of delusions, hallucinations, or disordered thinking. Id. Plaintiffs affect was congruent with her thoughts and speech. Id. Her mood was calm, and she appeared relaxed and comfortable. Id. Her sensorium was clear, and she was oriented x3. Id. Plaintiff's attention and concentration were intact, and she was able to do counting, simple calculations, and serial 3s. Id. Her recent and remote memory skills were mildly impaired, and she was able to recall three objects immediately and two after five minutes, as well as restate five digits forward and two digits backward. Id. Dr. Noia estimated that plaintiff's intellectual functioning was in the average range, and her general fund of information appeared to be appropriate to experience. Id. Plaintiff's insight and judgment were good. Id.

Dr. Noia opined that vocationally, plaintiff appeared to have no limitations in understanding and following simple instructions and directions, performing simple and complex tasks, maintaining attention and concentration for tasks, attending to a routine and maintaining a schedule, learning new tasks, and making appropriate decisions. T. 515. Dr. Noia opined that plaintiff appeared to be able to relate to and interact

moderately well with others, but that there appeared to be marked limitations regarding her ability to deal with stress.  Id.  Dr. Noia indicated that plaintiff's difficulties were caused by psychiatric problems, and that the results of the examination appeared to be consistent with psychiatric problems.  Id.  Dr. Noia opined that these problems may significantly interfere with plaintiff's ability to function on a daily basis.  Id.  As it relates to plaintiff's mental impairments, Dr. Noia diagnosed plaintiff with (1) posttraumatic stress disorder;

(2) unspecified anxiety disorder; and (3) panic disorder.  Id.  Dr. Noia recommended that plaintiff continue with her treatment.  Id.  Although her prognosis was guarded, he hoped that with continued intervention and support, plaintiff would find symptom relief and maximize her abilities.  Id. at 516.

Nurse Practitioner Jody Hipple completed a Medical Source Statement on September 1, 2016.  Ms. Hipple indicated that she had treated with plaintiff every two to three months since 2012.  T. 1097.  She noted that plaintiff had posttraumatic stress disorder, neuropathy, and chronic pain.  Id.  She described plaintiff's prognosis as poor. Id.  Ms. Hipple noted that plaintiff could sit for ten minutes at a time before needing to get up.  Id.  She opined that plaintiff could stand for less than five minutes at one time before needing to move around.  Id.  Ms. Hipple opined that plaintiff could stand/walk less than two hours in an eight-hour workday, and sit for at least six hours in an eight-hour workday.  Id. at 1098.  She indicated that plaintiff needed a job that permitted shifting positions at will from sitting, standing, or walking.  Id.  Ms. Hipple opined that plaintiff could rarely lift less than ten pounds and never lift over ten pounds.  Id.  Plaintiff

14

could rarely twist, stoop/bend, crouch/squat; never climb ladders; and occasionally climb stairs.  Id.  She could occasionally look down, turn her head right or left, look up, and hold head in a static position.  Id.  Ms. Hipple opined that plaintiff could rarely use her hands to grasp or turn twist objects; perform fine manipulations with her fingers; or reach.  Id.

Ms. Hipple indicated that plaintiff would need to take unscheduled breaks every five minutes during an eight-hour workday.  T. 1099.  She opined that plaintiff would be off task more than twenty percent of the day, and would likely have more than four bad days per month.  Id.

Ms. Hipple also completed a treating source statement concerning her treatment of plaintiff in August 2016.  She diagnosed plaintiff with neuropathy and chronic back pain.  T. 1091.  Ms. Hipple indicated that plaintiff's neuropathy prognosis was poor, and that it was expected to continue permanently.  Id.  She further indicated that plaintiff's chronic back pain prognosis was guarded, and that it was also expected to be permanent.  Id.  She opined that plaintiff would be permanently unable to participate in any activities.  Id. at 1092.

## 2. Court's Analysis

Plaintiff's main contention is that the ALJ impermissibly substituted her judgment for that of Dr. Lorensen and Dr. Noia.  See Dkt. No. 17 at 17.  Although an "'ALJ cannot arbitrarily substitute his own judgment for competent medical opinion' he [or she] remains 'free to choose between properly submitted medical opinions' and to rely on

15

those opinions in reaching his disability determination." <u>Kessler v. Colvin</u>, 48 F. Supp. 3d 578, 597 (S.D.N.Y. 2014) (internal citation omitted). Although a treating physician's opinion is not binding on the Commissioner, the opinion must be given controlling weight when it is well supported by medical findings and not inconsistent with other substantial evidence in the record.  <u>See</u> <u>Veino v. Barnhart</u>, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 416.927(d).  Where the treating physician's opinion is contradicted by other substantial evidence, the ALJ is not required to give the opinion controlling weight.  <u>See</u> <u>Halloran</u>, 362 F.3d at 32-33. The ALJ must, however, properly analyze the reasons that the report is rejected.  <u>See id.</u>  An ALJ may not arbitrarily substitute his or her own judgment for competent medical opinion. <u>See</u> <u>Rosa v. Callahan</u>, 168 F.3d 72, 79 (2d Cir. 1999).

### a. Dr. Lorensen and Plaintiff's Physical Limitations

As to Dr. Lorensen, the ALJ discussed her reasoning for granting Dr. Lorensen's opinion "some weight," finding that it was inconsistent with other evidence in the record including her own examination notes.  The ALJ noted that the record did not support the significant back-related limitations that Dr. Lorensen had opined.  T. 20.  First, the ALJ noted that plaintiff's treatment had been "relatively conservative" and she had not had invasive interventions like surgeries or shots.  <u>Id.</u>  The record demonstrates that plaintiff rejected Nurse Practitioner Katherine Stanbridge Maine's offer to pursue certain treatments like non-controlled medications, nerve blocks, trigger point injections, physical therapy, and chiropractic intervention.  <u>Id.</u> at 20, 393, The ALJ also noted

"multiple incidents of drug-seeking behaviors" in the record, which "raise[d] doubts as to the reliability of [plaintiff's] reported symptoms." Id. at 20. As such, plaintiff's testimony that she "refuse[d] to take narcotics only because [she's] seen what they do to people" and didn't "want to be addicted to any type of pain killer or anything like that," id. at 73, is belied by evidence in the record demonstrating "drug-seeking behavior." See id. at 393 ("[U]nfortunately, [plaintiff] had violated the controlled substance policy by taking more medication than prescribed."), 427 ("She cannot receive narcotics from our office as she violated [medical management] agreement was d/c from NY Spine and [W]ellness for the same reason."), 725 (noting that plaintiff's primary care provider refused to provide her with Xanax refills), 892 ("She states that she still needs pain meds, but she had broken her pain contract previously and I advised her that I would not prescribe her controlled substances anymore."), 934 ("Advised her that . . . she broke her pain contract. I am not willing to prescribe her controlled medications. She was d/c from NY Spine an Wellness as she took more morphine than prescribed . . . . She states if I don't give her any percocet she will just buy it off the street.").

The ALJ noted that Dr. Lorensen's moderate restrictions were inconsistent with her own examination. Although Dr. Lorensen indicated that plaintiff had restricted lumbar range of motion, decreased sensation in the her right leg, and an abnormal gait favoring her left leg, she also noted that [plaintiff] had bilaterally negative straight leg raising, 5/5 strength in her upper and lower extremities, and no muscle atrophy. Id. at 20, 506-07. Such findings are consistent with those of plaintiff's treating provider Ms. Hipple, who frequently assessed generally unremarkable findings. See id. at 650, 677,

17

687, 698, 709, 715, 725, 730, 768, 773, 780, 785, 790, 798, 808, 812, 816, 820, 861, 869, 878, 886, 895, 923, 929, 947, 975, 1203, 1236, 1245.  Althoug h the Court is aware that there is some evidence in the record that supports Dr. Lorensen's assessment, "the existence of evidence that supports the plaintiff's position does not negate the ALJ's findings where, as here, they are supported by substantial evidence."  Ortiz v. Chater, No. 95 CIV, 1884 (JSM), 1996 WL 164485, at *4 (S.D.N.Y. Apr. 9, 1996) (citing Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988); Perez v. Shalala, 890 F. Supp. 218, 223 (S.D.N.Y. 1995)).

To the extent that plaintiff argues that the ALJ ignored evidence that supported Dr. Lorensen's assessment including positive straight leg raise testing, decreased strength in lower extremities, and a 2016 x-ray that depicted "significantly worse findings," Dkt. No. 17 at 18-19, the Court finds that this argument misplaced.  It is well-settled that "the fact that the ALJ did not explicitly address these concerns does not mean that they were not considered."  Camille v. Colvin, 104 F. Supp. 3d 329, 346 (W.D.N.Y. 2015), aff'd, 652 F. App'x 25 (2d Cir. 2016) (summary order) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (declining to adopt rule that an ALJ must expressly discuss a claimant's capacity to perform each work-related function, noting "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence.")).  Moreover, "[e]ven if the ALJ had explicitly addressed [plaintiff's allegations of diminished capacity in her lower extremities and negative x-ray results], these impairments would not likely impact the ultimate finding of the ALJ that [p]laintiff was not disabled within the meaning

of the Act." Id. (citing Johnson, 817 F.2d at 986).  Regardless, as the Commissioner

sets forth, medical evidence in the record is consistent with the ALJ's determination to

discount back-related limitations, including findings that plaintiff had generally normal

range of motion in her back and musculoskeletal system during the relevant period.

See T. 637-38, 689, 717, 1102, 1110, 1125, 1157, 1162, 1172, 1229, 1236, 1260.

Insofar as plaintiff argues that the ALJ erred by failing to include a reaching

limitation, the Court finds otherwise.  Dr. Lorensen opined that plaintiff had moderate to

marked restrictions reaching.  T. 508.  Ms. Hipple similarly opined that plaintiff could

rarely reach.  Id. at 1098.  The ALJ discredited these limitations, finding that they were

inconsistent with the rest of the record.  Id. at 21.  The ALJ noted that there was

"nothing objectively wrong with [plaintiff's] hands arms or hands that would support such

limitation," and cited Dr. Lorensen's finding that plaintiff had 5/5 strength in her upper

extremities, as well as 5/5 grip strength and intact hand and finger dexterity bilaterally.

Id. at 21, 507-08.  The ALJ also relied on plaintiff's testimony that she wrote and kept a

journal, which she found demonstrated that "her alleged hand shaking [did] not limit her

ability to perform fine motor tasks."  Id. at 21, 71.  Thus, based on the record as a

whole, as discussed above, the Court concludes that the ALJ's decision to discount Dr.

Lorensen's opinion that plaintiff had moderate to marked limitations reaching was

supported by substantial evidence.  See Dierdre R. v. Comm'r of Soc. Sec., No.

5:17-CV-0395 (TWD), 2018 WL 4565769, at *8 (N.D.N.Y. Sept. 24, 2018) (concluding

that the ALJ did not err in discounting the consultative examiner's opinion that the

plaintiff had moderate to marked limitations reaching where the record gleaned

generally unremarkable findings); Babcock v. Berryhill, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *13 (N.D.N.Y. Sept. 12, 2018) (concluding that substantial evidence supported the ALJ's decision to reject consultative examiner's opinion that the claimant had moderate to marked limitations reaching); Disotell v. Comm'r of Soc. Sec., No. 7:16-CV-0480 (WBC), 2017 WL 3491851, at *5 (N.D.N.Y. Aug. 14, 2017) (concluding that substantial evidence supported the ALJ's decision to reject consultative examiner's opinion that the claimant had marked limitations in reaching).

It is well-settled that it is not improper for an ALJ to adopt only a portion of a medical source's opinion; indeed, "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, he or [she] was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013). Thus, the Court finds that there is no indication that the ALJ impermissibly substituted her opinion for that of Dr. Lorensen with regard to plaintiff's physical limitations.

### b. Dr. Noia and Plaintiff's Mental Limitations

Plaintiff similarly argues that the ALJ improperly substituted her judgment for that of Dr. Noia and failed to make findings regarding plaintiff's ability to tolerate stress. Dkt. No. 17 at 21-23. The Court disagrees. Contrary to plaintiff's argument, the ALJ provided for stress-related limitations in her RFC determination, concluding that she could "handle simple, repetitive, work-related stress, in that she can make occasional

decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require her to supervise of manage the work of others." T. 19. Such finding is consistent with Dr. Noia's opinion, wherein he stated that plaintiff had no limitations understanding and following simple instructions and directions, performing simple and complex tasks, maintaining attention and concentration for tasks, attending to a routine and maintaining a schedule, learning new tasks, and making appropriate decisions, but retained a marked limitation for dealing with stress. Id. at 515. The ALJ granted Dr. Noia's opinion "considerable weight," noting that plaintiff's abilities dealing with stress "are addressed by limiting her to simple work." Id. at 22. As the ALJ noted, such assessment is consistent with the opinion of the state agency psychologist Dr. S. Bhutwala, who indicated that plaintiff retained the mental RFC to perform "simple work." Id. at 95-96. To the extent that plaintiff retains a marked limitation in her ability to deal with stress, the record evidence supports the argument that she would be able to handle "simple, repetitive work-related stress." Id. at 19. Further, "[p]laintiff does not provide persuasive evidence as to why the ALJ should have interpreted the [marked] limitation in a more limiting manner." Bush v. Comm'r of Soc. Sec., No. 7:16-CV-1007 (GTS), 2017 WL 4621096, at *8 (N.D.N.Y. Oct. 13, 2017) (concluding that the plaintiff could perform simple work where she retained a moderate-to-marked limitation in her ability to deal with stress). Insofar as plaintiff sets forth an argument under SSR 85-15, the Court agrees with the Commissioner that Dr. Noia's opinion supports plaintiff's ability to meet the "basic mental demands" set forth therein. See Dkt. No. 22 at 19; Dkt. No. 17 at 21. Moreover, there is no indication that

the ALJ erred in failing to re-contact Dr. Noia regarding plaintiff's as the record was fully-developed and contained the opinions of Dr. Noia and Dr. Bhutwala, which constitute substantial evidence.

The ALJ has the responsibility of reviewing all the evidence before her, resolving inconsistencies, and making a determination consistent with the evidence as a whole. See Bliss v. Colvin, No. 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015). "[I]t is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon 'adequate findings supported by evidence having rational probative force.'" Camarata v. Colvin, No. 14-CV-0578, 2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015) (quoting Galiotti v. Astrue, 266 F. App'x 66, 67 (2d Cir. 2008) (summary order)). It is clear from the ALJ's overall decision that she appropriately considered the evidence before her, including the numerous opinions of record.

As such, the Court's review of the ALJ's overall decision indicates that she properly reviewed the evidence of record and provided sufficient explanation for her analysis. For the reasons above, the Court therefore finds that the ALJ's RFC determination (including her analysis of the opinion evidence) and overall finding that plaintiff is not disabled are supported by substantial evidence. Remand is not required on these bases.

### IV. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby

**ORDERED**, that the plaintiff's motion (Dkt. No. 17) is **DENIED**; and it is further

22

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 22) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: March 6, 2019
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge